2024 IL App (1st) 240029-U

No. 1-24-0029

Order filed September 16, 2024

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF BING YU GRANT, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| and | ) | No. 16 D 2323 |
| | ) | |
| CALVIN A. GRANT, | ) | Honorable |
| | ) | Karen J. Bowes, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Appeal dismissed as untimely in relation to one judgment and for being filed while other postjudgment claims and motions were pending.

¶ 2    This appeal concerns the 2021 judgment of dissolution of the marriage of petitioner Bing

Yu Grant and respondent Calvin Grant. Respondent appeals *pro se*, contending that the judgment

and subsequent indirect civil contempt orders are erroneous because the distributions and child

support in the judgment deviate from Illinois guidelines and did not properly account for his

income and petitioner's employment. He also challenges an August 2023 emergency order, seeking vacatur of the order "and credit [in the] balance of parenting time." We dismiss this appeal for lack of jurisdiction.

¶ 3    In March 2016, petitioner filed her petition for dissolution of marriage. The parties married in 2002 and had three children: C.G., born in 2003; E.G., born in 2006; and Cl.G., born in 2011. Petitioner was a musician and respondent was an ophthalmologist. Petitioner sought the majority of parenting time and significant parental decision-making responsibilities, a "just and equitable distribution" of marital property, maintenance and child support from respondent's "substantial income," and payment of her attorney fees and costs from respondent's "substantial resources."

¶ 4    Respondent filed a response seeking sole parental decision making and the majority of parenting time, more than half of the marital estate, that both parties contribute to supporting the minor children, that petitioner receive no maintenance or attorney fees, and that she contribute to his attorney fees. He later filed a counterpetition for dissolution, alleging that petitioner was not fit to be granted significant parental decision-making responsibilities, and that she dissipated funds by "out-of-control spending" and not working full time. Respondent sought half of the marital property and petitioner's alleged dissipation. He also sought that petitioner contribute toward marital debts and receive no maintenance or attorney fees, sole custody of the minor children, and that petitioner pay child support and contribute towards his attorney fees.

¶ 5    Petitioner responded to respondent's counterpetition, asking the court to deny respondent's counterpetition and grant the relief sought in her original petition.

¶ 6    Trial was held in December 2020. The record does not include a transcript of the trial proceedings or an acceptable substitute. See Ill. S. Ct. R. 323(c), (d) (eff. July 1, 2017).

¶ 7     Also in December 2020, the court entered an agreed allocation judgment and parenting plan. It addressed the minor children's "education, health, religion, and extracurricular activities" and established a detailed allocation of parenting time, including holidays and vacations.

¶ 8     The court issued a judgment of dissolution filed-stamped September 22, 2021, reciting that the court "conducted a trial, *** heard testimony of the parties and their respective witnesses, and *** assessed the credibility of the parties and witnesses." The court found that petitioner was a musician who earned about $86,000 annually, while respondent was self-employed as a retinal surgeon with "a very busy practice." The court found respondent's income was "difficult to determine" due to his "failure to answer discovery and file tax returns." Noting that petitioner "has been the primary caretaker of the parties' children," which affected her career, and both "parties lived a lavish lifestyle," the court awarded petitioner $15,000 monthly maintenance for seven years and seven months commencing January 1, 2021.

¶ 9     The judgment distributed marital property and debt, and required respondent pay petitioner $359,947.54, at $5000 monthly for 72 months, "to effectuate a 60/40 division of the marital estate." The court found that respondent dissipated the marital estate and awarded petitioner $231,632.83 to be paid for 58 months at $4000 monthly.

¶ 10    The judgment required respondent pay monthly child support of $3500 commencing January 1, 2021, or $2500 upon C.G.'s emancipation, a deviation "from the statutory amount of $829.00 per month" due to the children's needs and lifestyle. The judgment apportioned various

expenses for the children. It required respondent pay $125,888 of petitioner's attorney fees, $2187.50 in court reporter fees, and a $36,300 discovery fine.[1]

¶ 11    In November 2021, petitioner filed a petition for rule to show cause, seeking indirect civil contempt against respondent for not paying maintenance, child support, property settlement payments, dissipation payments, the court reporter fee, or the discovery fine. The court issued a rule to show cause in January 2022, to be heard in April 2022.

¶ 12    In January 2022, petitioner filed another petition for rule to show cause, alleging that respondent failed to refinance the marital residence as required by the judgment so it should be sold as the judgment provided. The court issued a rule to show cause in March 2022, also to be heard in April 2022.

¶ 13    On April 20, 2022, the court issued a contempt order against respondent. It found that he failed to pay $118,750 in maintenance, $48,000 in child support, and other payments pursuant to the judgment. The court found him in indirect civil contempt and ordered his commitment to jail stayed until May 23, 2022, if he purged his contempt by paying $50,000. On May 23, 2022, the court noted that respondent paid $17,000 towards the purge and ordered his commitment to jail until he paid the remaining $33,000. On June 1, 2022, the court acknowledged respondent posted $33,000 bond.

¶ 14    In July 2023, petitioner filed a motion to set an immediate purge, alleging that respondent willfully failed to pay maintenance or child support. On July 25, 2023, the court issued a contempt order against respondent, finding that he failed to pay $241,250 in maintenance, $85,500 in child

---

[1] Respondent filed a notice of appeal from the judgment of dissolution, but this court dismissed that appeal. See *In re Marriage of Grant*, No. 1-21-1388 (Mar. 18, 2022) (dispositional order).

support, and other payments due under the judgment. The court found him in indirect civil contempt and ordered his commitment to jail stayed until September 14, 2023, if he purged his contempt by paying $49,000 outstanding from May to July 2023 and $42,500 for August 2023.

¶ 15    In August 2023, petitioner filed an emergency motion to suspend respondent's parenting time, alleging that on August 21, C.G. and Cl.G. sent petitioner text messages asking her to pick them up from respondent's home because he "was not okay," "thinks his phone was cloned," was "making us turn [off] all the lights and lock the doors," "heard footsteps," put them in a room, and called the police. Respondent allegedly hid after the police arrived and had C.G. answer the door. Petitioner alleged that on August 22, C.G. texted her that respondent jumped out a second-floor window, and he was taken to a hospital where petitioner was told he would undergo a psychiatric evaluation. Petitioner argued that respondent's behavior showed he could not provide the children with a safe environment.

¶ 16    On August 23, 2023, the court granted the emergency motion, suspended respondent's parenting time until further notice, and continued the case to September 14, 2023.[2]

¶ 17    Respondent filed an emergency motion to vacate the order suspending his parenting time. He claimed he was kept in the court's waiting room on August 23, 2023, until after the court ruled. He alleged his cellphone had been cloned and hacked on August 17, the breach was traceable to a tablet Cl.G. lost weeks earlier, and he hid the children because he received messages that made him fearful. He claimed he experienced chest pains while jogging rather than leaping from a window. He alleged C.G. told the hospital that he had past ailments that he did not, so that a

---

[2] The record includes a copy of the order that is file-stamped August 23, 2023, but also bearing an electronic stamp from the clerk's office dated September 8, 2023.

psychiatric evaluation was done, which found he likely had a panic attack. He claimed petitioner had motive to hack his cellphone. In addition to vacatur of the order, he sought to examine Cl.G. about the location of her tablet.

¶ 18    On September 1, 2023, the court found respondent's motion to vacate was not an emergency and scheduled it for hearing on September 14, 2023.

¶ 19    Petitioner filed a response to respondent's motion, arguing his allegations were irrational and made in bad faith, and claiming he told police he fell from his bedroom window.

¶ 20    On September 14, 2023, the court continued the case pending a report by a guardian *ad litem*. Suspension of respondent's parenting time would continue, but he could have telephone contact with the children. He was ordered to list the marital residence for sale with the proceeds to be distributed by further order of the court.

¶ 21    On October 31, 2023, the court ordered respondent to pay $50,000 within 30 days towards a child support arrearage of about $103,000, granted him leave to file a motion to modify child support and maintenance, and restored his parenting time with E.G.

¶ 22    In December 2023, respondent filed a motion to modify the dissolution judgment, claiming his medical license was suspended "for 6 months indefinitely" on July 24, 2023, and he was challenging the suspension. He also raised challenges to the dissolution judgment, including that petitioner should have been barred from testifying at trial because she was not deposed. He claimed maintenance was based on the gross revenue of his practice when it was larger, and did not consider "real operational expenses." He claimed his computer, router, and cellphones were hacked or cloned so important messages and documents were deleted or lost, and someone threw a baseball at a hornet's nest outside his home. He asked the court to eliminate the dissipation payments, make

petitioner pay college expenses, recalculate child support and maintenance, and not award petitioner attorney fees.

¶ 23 On December 5, 2023, the court noted that respondent paid $10,000 and owed $40,000 on the October 2023 order, and ordered him to pay the latter sum by December 20, 2023. The court gave petitioner time to respond to respondent's motion for modification.

¶ 24 Later in December 2023, respondent filed a motion to vacate the contempt order and the orders modifying his parenting time. He argued that proper procedure for imposing contempt was not followed and claimed he lacked the ability to purge civil contempt. Against the orders modifying parenting time, respondent claimed that the "children's representative" admitted on December 5, 2023, that "her decision" was based "on a 'gut feeling'" and "not based on law or legal precedent."

¶ 25 On December 20, 2023, the court issued an order noting that respondent owed $393,750 maintenance and $103,000 child support and ordering him to pay petitioner $2000 electronically by the next day. The court allowed petitioner time to respond to respondent's motion to vacate and continued all pending matters to January 29, 2024.

¶ 26 On December 22, 2023, petitioner filed a motion to enforce the December 20 order, alleging that respondent did not wire her $2000 as ordered. The notice of motion set the hearing date as January 8, 2024.

¶ 27 Respondent filed his *pro se* notice of appeal commencing this appeal on January 3, 2024. He listed the dates of the orders being appealed as September 21, 2021, September 8, 2023, and an unspecified date in December 2023.

¶ 28     On appeal, respondent contends *pro se* that the dissolution judgment and subsequent indirect civil contempt orders are erroneous because the distributions and child support deviate from Illinois guidelines and did not properly account for his income and petitioner's employment. Respondent also contends that the August 2023 emergency order is erroneous and seeks its vacatur "and credit [in the] balance of parenting time."

¶ 29     Although not addressed by the parties, this court has an independent duty to consider its jurisdiction. *In re Marriage of Larsen*, 2023 IL App (1st) 230212, ¶ 98. After doing so, we conclude that we lack jurisdiction over this appeal.

¶ 30     We have jurisdiction over appeals filed within 30 days following a final judgment or order that disposes of all pending claims. *Id.*; Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303(a) (eff. July 1, 2017). Under certain circumstances, we also have jurisdiction over appeals from orders making a final disposition of less than all pending claims. Ill. S. Ct. R. 304 (eff. Mar. 8. 2016).

¶ 31     However, respondent's notice of appeal was not filed within 30 days following a final disposition of *any* pending claims. In his notice of appeal, respondent lists three judgments as being appealed. First, he lists an order of September 21, 2021. This is presumably the dissolution judgment file-stamped on September 22, 2021, which he had 30 days to appeal. Ill. S. Ct. R. 303(a) (eff. July 1, 2017). That 30-day period had long passed by January 3, 2024, when he filed his notice of appeal. Second, he lists an order of September 8, 2023, which presumably refers to the order suspending his parenting time.[3] Again, well more than 30 days passed between that order and respondent's January 3, 2024, notice of appeal.

_____

[3] While no order was entered on September 8, 2023, as noted, the record includes a copy of the August 23, 2023, order suspending respondent's parenting time that the court clerk marked with both dates.

¶ 32   Lastly, the notice of appeal lists an unspecified order of December 2023. This may refer to the orders of December 5 and December 20, 2023, both of which were entered within 30 days of the notice of appeal. However, the December 2023 orders continued respondent's motions to January 29, 2024, so his motions were still pending when he filed his notice of appeal on January 3, 2024. Also still pending at that time was petitioner's motion to enforce the December 20, 2023, order to pay $2000. As there was no final disposition of pending claims, including respondent's own claims, there was no final order to be appealed. *In re Marriage of Larsen*, 2023 IL App (1st) 230212, ¶ 98.

¶ 33   In summary, this appeal is untimely as considerably more than 30 days passed from the judgment before notice of appeal was filed. Moreover, it is also premature because the trial court had not made a final disposition of respondent's motions seeking to modify or challenge the judgment when he appealed. Accordingly, we must dismiss this appeal for lack of jurisdiction.

¶ 34   Dismissed for lack of jurisdiction.